## COUNTY OF SALINE V. COUNTY OF GAGE.*

FILED DECEMBER 17, 1902. No. 10,902.

Commissioner's opinion, Department No. 3.

1. County: BRIDGE: HIGHWAY: BOUNDARY BETWEEN COUNTIES: STATUTORY LIABILITY. The liability of a county to contribute for the cost of the construction or repair of a bridge. on a highway extending along the line between that and adjoining county is purely statutory, and the statutory liability is based on sections 87, 88 and 89, chapter 78, Compiled Statutes.

2. ———: ———: ———: ———: ———: PAYMENT BY ONE COUNTY: ACTION BY THE OTHER FOR CONTRIBUTION. When such bridge is constructed and the entire cost thereof paid by one county, no cause of action arises against the adjoining county for contribution, in the absence of a contract in that behalf to which the latter county is a party.

3. ———: ———: ———: ———: ———: ———: CONTRACT: REFUSAL. Where repairs on such bridge are paid for wholly by one county, in the absence of a contract in that behalf to which the other county is a party, no cause of action arises against the latter unless it has refused to enter into a contract therefor.

4. Estoppel. That the latter county allowed the work of construction to proceed without objection and, when completed, graded the approaches to the bridge, and that its inhabitants used the bridge, would not estop the county, nor its taxpayers from denying the validity of a claim presented by the former county to the latter for half the cost of such bridge.

---

* Rehearing allowed. Judgment below reversed. See opinion, page 844, post.

5. ———: APPEAL. That such claim was allowed by the board of the latter county, is not available as an estoppel on an appeal from the order allowing such claim.

ERROR from the district court for Gage county. Action for alleged contributory liability for cost of the construction and repair of a bridge. Before STULL, J. Trial to the court. Judgment for defendant. *Affirmed.*

*William Granger Hastings, George H. Hastings* and *Archie S. Sands (Ben V. Kohout* and *J. Albert Wild* on rehearing), for plaintiff in error.

*Harry Sackett, Samuel Rinaker* and *Leonard W. Colby,* contra.

ALBERT, C.

A temporary bridge, costing $95, and afterward a permanent one, costing $2,945, were constructed over a stream on a highway on the line between the counties which are parties to this action in 1893, to replace one that had been destroyed by a freshet. The entire cost of these structures was paid by Saline county, the plaintiff, on the 25th day of April, 1894, although the bridge which they replaced had been built and kept in repair at the joint expense of both counties; whether by contract or not does not appear. After paying the cost of erecting the bridges in question, the plaintiff presented a bill to the defendant for one-half thereof, which was allowed by the county board of the defendant, and a warrant drawn for its payment. In due time a taxpayer of the defendant appealed to the district court from the order allowing the claim. In the district court the plaintiff pleaded two causes of action, namely, one for one-half the cost of the temporary bridge, the other for one-half the cost of the permanent bridge; the former on the theory that the temporary bridge was in the nature of repairs to the one destroyed, the latter on the theory that the defendant was a joint party with the plaintiff to a contract with a third party, under and in pursuance of

which such third party constructed the permanent bridge, and was paid by the plaintiff. The answer is a general denial. The court found for the defendant and gave judgment accordingly. The plaintiff brings error.

The statutory provisions for the construction and repair of bridges over streams on roads on county lines are found in chapter 78 of the Compiled Statutes, of which the following sections alone concern us at this time:

"Sec. 87.* Bridges over streams which divide counties, and bridges over streams on roads on county lines, shall be built and repaired at the equal expense of such counties; *Provided,* That for the building and maintaining of bridges over streams near county lines, in which both are equally interested, the expense of building and maintaining any such bridges shall be borne equally by both counties.

"Sec. 88. For the purpose of building or keeping in repair such bridge or bridges, it shall be lawful for the county boards of such adjoining counties to enter into joint contracts; and such contracts may be enforced in law or equity, against them jointly, * * * by any parties interested in such bridge or bridges, for any neglect of duty in reference to such bridge or bridges, or for any damages growing out of such neglect; *Provided,* That if either of such counties shall refuse to enter into contracts to carry out the provisions of this section, for the repair of any such bridge, it shall be lawful for the other of said counties to enter into such contract for all needful repairs, and recover by suit from the county so in default such proportion of the costs of making such repairs as it ought to pay, not exceeding one-half of the full amount so expended.

"Sec. 89. If the county board of either of such counties, after reasonable notice in writing from the county board of any other such county, shall neglect or refuse to build or repair any such bridge, when any contract or agreement has been made in regard to the same, it shall be lawful for the board so giving notice to build or repair the same, and

---

* Sections 87, 88 and 89 correspond to 6085, 6086 and Cobbey's Annotated Statutes.

to recover, by suit, one-half (or such amount as shall have been agreed upon) of the expense of so building or repairing such bridge, with costs of suit and interest from the time of the completion thereof, from the county so neglecting or refusing."

It will be conceded that if the defendant be liable in this case, it is liable by virtue of some of the foregoing provisions, unless it be on the theory of estoppel, which we shall notice presently. *McCann v. Otoe County,* 9 Nebr., 324, 331. Through no fault of counsel, the plaintiff has wholly failed to bring itself within those provisions, in that it has failed to show that the defendant ever entered into any contract for the construction or repair of the bridge, or that it ever refused to enter into a contract for the repairs. The contract for the construction of the permanent bridge was in writing. It was between the plaintiff and a third party exclusively. While the evidence shows that a member of the board of the defendant county was present at a meeting of the board of the plaintiff when the bids for the erection of the bridge were opened and when the contract was let, and that he participated in the proceedings, there is no evidence that he was authorized to act for the defendant in that behalf, if, indeed, such authority to do so could be delegated to one member of the board. The only competent witness called to show that he was thus authorized (the record of the county board is silent on the matter) was one who was clerk of the board. His testimony is to the effect that such member was authorized, but whether by the county board, or by some of the individual members thereof, the witness was unable to say. What has been said as to the contract for the permanent bridge is equally true of the other, save that it does not appear that there was any written contract for its construction. If, as claimed by plaintiff, this bridge was in the nature of repairs, still, as to it, the plaintiff must fail, because it does not appear that the defendant ever made or refused to enter into a contract therefor. See sections 88 and 89, *supra.*

It is claimed, however, that the defendant and its taxpayers are estopped to deny the validity of the plaintiff's claim. The grounds upon which the plaintiff bases its argument in this behalf, stated in the language of the brief, are as follows:

"First—Because of their attempting, at least, to cooperate and contract with Saline county in the building of the bridge.

"Second—Because of their standing by and seeing Saline county expend its money and complete the bridge and then taking possession thereof and grading the approaches thereto, and aiding in keeping the same in repair and fit for public travel.

"Third—Because that after the bridge was completed, accepted and appropriated by Gage county and by every taxpayer as well, the board of supervisors of Gage county duly examined, audited and allowed the bill claimed by Saline county for one-half cost of building the bridge."

As to the first ground, we think that has been already disposed of. There is no evidence that the defendant ever attempted to participate and contract with the plaintiff in the matter. So far as the record shows, whatever attempt of that kind was made, was made by an individual acting without authority to bind the defendant.

As to the second, we are wholly unable to see that the defendant was under any legal or moral obligation to prevent the plaintiff from expending its money in the construction of the bridge, in pursuance of its own contract with a third party. By grading the approaches to the bridge, it merely put one of its highways in condition for travel. This certainly would not operate as an estoppel.

As to the third ground, it is a mere begging of the question. The order of the county board allowing the claim was in the nature of a judgment. The taxpayer, in the exercise of a statutory right, appealed therefrom. To hold him, or the county, estopped by the order appealed from, would render the statute, granting such right, nugatory.

We are thoroughly satisfied that the judgment of the district court is right and recommend its affirmance.

DUFFIE and AMES, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

The following opinion on rehearing was filed December 2, 1903. *Judgment below reversed:*

Commissioner's opinion, Department No. 1.

1. County: BOUNDARY: BRIDGE: CONSTRUCTION: CONTRIBUTION: JOINT CONTRACT: SUBSEQUENT RATIFICATION: STATUTE. A county can become obligated to contribute towards the expense of building a bridge over a stream upon a boundary line between itself and another county, either by entering in the first instance into a joint contract for the construction of such bridge in the manner prescribed by statute or by subsequently ratifying a contract for that purpose.

2. ————: ATTEMPTED CONTRACT: NEGLECT OF REQUISITE FORMALITIES: RATIFICATION. When the county boards of adjoining counties have attempted to enter into a joint contract for the purpose above mentioned, but, by reason of the neglect of requisite formalities, one of such counties fails of becoming obligated thereby, and the other, in good faith, and pursuant to the contract, builds and pays for the bridge, the former may ratify and confirm the contract by the allowance in behalf of the latter of a claim for one-half the contract price of the structure, and a taxpayer can not defeat or annul such ratification by appealing from the order of allowance.

AMES, C.

This is a rehearing after a decision in the same case found on page 839, *ante.* The facts are there sufficiently stated, except the circumstance that before the plaintiff county entered into the contract for the building of the bridge in question, it notified the county board of Gage county of its intention so to do, and demanded of it co-operation in so doing, with which demand the board neglected to comply, although, as is shown in the opinion cited, some ineffectual attempt at compliance was made. The main

contention of the plaintiff county upon the reargument is that such neglect, after such notice, is, under the provisions of section 89 of chapter 78 of the Compiled Statutes (Annotated Statutes, sec. 6087), entitled "Roads", equivalent to refusal, and that the ineffectual attempt at compliance was itself a negligent act within the meaning of the section. This contention may, as it seems to us, be upheld without affecting the validity of the former decision. The work undertaken in this instance was not, as in the case of *Cass County v. Sarpy County,* 63 Nebr., 813, the repair of an existing bridge, but the building of an entire new structure in the place of one previously wholly destroyed. In the case cited it was held that section 88 of the chapter obligated counties to contribute towards the repair of bridges over streams upon county lines dividing them, and that when either county in such cases refused to join in making such repairs the other might do so at its own expense, and recover compensation from the adjoining county therefor, even although the bridge in question was not, in the first instance, constructed by the joint action of the counties. But the provisions of this section are not invoked in, and are plainly not applicable to, the present situation. We do not find anywhere in the statute a provision for the building of such a bridge at the joint expense of adjoining counties, except that it be done pursuant to a contract to which both counties are parties, and the powers conferred by section 89 are expressly limited to such instances. But there is, as it seems to us, a different and satisfactory ground upon which the liability of the defendant county in this case may be adjudged. Section 87 of the chapter mentioned enacts, without qualification, that "bridges over streams which divide counties, and bridges over streams on roads on county lines, shall be built and repaired at the equal expense of such counties." The following section provides that for the building and repair of such bridges "it shall be lawful for the county boards of such adjoining counties to enter into joint contracts," etc. Now, assum-

ing that because of the want of formalities requisite to
constitute a joint contract, Gage county failed of becom-
ing bound in the first instance for the building of this
bridge, so that an action against her by the contractor
to recover the contract price could not have been main-
tained, still she had, through her county board, partici-
pated in good faith in procuring the building of the
bridge; and in view and by reason of such participation,
Saline county had incurred an obligation therefor, which
she was compelled to, and did, discharge. The equitable
duty of Gage county to discharge one-half of this burden
is evident. Is there anything in the language or spirit of
the statute, or is there any consideration of public policy,
to prevent her county board from ratifying and confirm-
ing a contract and transaction by which she might law-
fully have become bound in the beginning, and by which
she attempted to and would have become bound, except for
non-compliance with certain formalities above alluded to?
We think not. It is a rule subject to few, if any, excep-
tions, that a corporate authority may ratify and confirm
any act or contract in its behalf or for its benefit which
it might have lawfully done or made originally. We do
not think that this case furnishes an exceptional instance.
When, therefore, the county board of Gage county, in
good faith and in the exercise of its corporate powers, al-
lowed the claim in controversy, it cured any informality or
insufficiency in the contract for the building of the bridge,
as effectually as though a formal and express ratification
of it had been made before the work was begun. Whether
the board itself might afterwards have rescinded its ac-
tion in this respect, it is not now necessary to decide,
although we are inclined to the opinion that it could not
have done so; but it is clear to us that the taxpayer,
by appealing from the order allowing the claim, can not
defeat or annul an act of the county board in the lawful
exercise of its express powers.

It is therefore recommended that the former judgment
of this court be vacated and set aside, and that the judg-

ment of the district court be reversed and the action dismissed.

OLDHAM,* C., concurs. HASTINGS,* C., not sitting.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the former judgment of this court be vacated and set aside, and that the judgment of the district court be reversed and the action dismissed.

REVERSED AND DISMISSED.